UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
v.                                      )        Case No. 12-PO-6164-LTS
                                        )
GEORGE LAFOUNTAIN,                      )
                                        )
              Defendant.                )
_____)

MEMORANDUM AND ORDER ON MOTION TO SUPPRESS

January 29, 2013

SOROKIN, C.M.J.

        Defendant George LaFountain has moved to suppress evidence seized in the course of a

traffic stop.  Doc. No. 7.  The Court held a hearing on the motion on January 25, 2013.  Only a

few facts, gleaned from the evidence presented at the hearing, are relevant.

        On March 4, 2012 at about 6:50 pm, LaFountain drove a friend's car along Monument

Square, within the confines of the Boston National Historic Park.  It was dark and well past

sunset.  He passed a National Park Service Ranger sitting in a marked patrol car on Chestnut

Street at the corner of Chestnut and Monument Square.  As LaFountain's car went by the corner,

the Ranger saw that one of the car's taillights was not illuminated.  The Ranger activated his

cruiser's blue lights and pulled out onto Monument Square behind LaFountain.  LaFountain's car

reached the junction of Monument Square and Lexington Street without slowing, a distance of

226 feet from where the Ranger had been sitting when he first observed LaFountain.  The Ranger

activated his siren, at which point LaFountain slowed his car and pulled over.  The Ranger

estimated that LaFountain's car traveled approximately ninety feet after the Ranger activated the

siren and before LaFountain's car came to a complete stop. Besides the defective taillight, the ranger observed LaFountain driving in an ordinary way, without drifting or weaving, for example.

The Ranger approached the car and spoke to LaFountain. In the course of their brief discussion, the Ranger smelled a "strong" odor of alcohol coming from the car and noted LaFountain's eyes were "a little glassy." Otherwise, the ranger observed LaFountain behaving in an ordinary way. LaFountain was polite and logical in conversation. After running LaFountain's license and registration, both of which were satisfactory, the Ranger directed LaFountain to step out of the car to perform field sobriety tests.

Here, LaFountain objects, arguing that the Ranger lacked reasonable suspicion to prolong the motor vehicle stop beyond this point. The Fourth Amendment requires that an investigative stop "be reasonably related in scope to the circumstances which justified the interference in the first instance." Terry v. Ohio, 392 U.S. 1, 20 (1968). "When determining the legitimacy of an investigative stop, a court must undertake a contextual analysis using common sense and a degree of deference to the expertise that informs a law enforcement officer's judgment . . . ." United States v. Cook, 277 F.3d 82, 85 (1st Cir. 2002). Here, the Ranger limited his additional investigation to the scope of the facts before him. Based on his observation of the "strong" odor of alcohol and LaFountain's "glassy" eyes, the Ranger had a reasonable suspicion that LaFountain was violating the regulations prohibiting operation of a motor vehicle under the influence of alcohol.

In light of these facts, the Ranger reasonably performed three field sobriety tests. LaFountain's actions upon exiting his car and his performance in each test yielded substantial

signs of impairment certainly sufficient to continue the investigative detention (and then to perform the additional tests).  United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994).  Insofar as the motion challenges the reasonable suspicion supporting the extension of the stop to perform the field sobriety measures, the Motion is DENIED.

At the conclusion of the field sobriety measures, the Ranger: informed LaFountain he was under arrest; handcuffed him; placed him into the Ranger's cruiser; and arranged for an inventory search and towing of LaFountain's car.  Thereafter, the Ranger transported LaFountain to the State Police barracks in Charlestown.  The barracks are outside the boundaries of the Park System.   Another law enforcement officer administered a breathalyzer test to LaFountain, after which the Ranger testified he "added" a charge for violating the regulation prohibiting operating a motor vehicle with a blood alcohol content exceeding 0.08 percent.  The Ranger then transported LaFountain, still in custody, to the Park Service police station, which is within the Park System.  There, the Ranger booked LaFountain, offered him the opportunity to waive his initial appearance before a magistrate judge, and released him on personal recognizance.

LaFountain also seeks suppression of the results of his post-arrest breathalyzer test, arguing the Ranger was without statutory authority to arrest him beyond the boundaries of the Boston National Historic Park and, thus, the Court should apply the exclusionary rule.  I disagree.

Under these circumstances, I find the Ranger arrested LaFountain outside the confines of the Park System, i.e., at the conclusion of the motor vehicle stop.  See United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994) (an arrest occurs when "'a reasonable man in the suspect's position would have understood his situation,' in the circumstances then obtaining, to be tantamount to

being under arrest").  The government's contention that the Ranger "did not arrest" LaFountain,

Doc. No. 9 at 4, is without merit, as is the government's argument that no arrest occurred because

"an arrest would have triggered an appearance before a United States Magistrate Judge," id. at

11.[1]

Next, I conclude the terms of the statute defining rangers' authority are plain.  Congress

empowered rangers to make arrests outside the boundaries of the Park System in only one limited

circumstance: when "the person to be arrested is fleeing [from the Park System] to avoid arrest."

16 U.S.C. § 1a-6(b).  The ordinary understanding of the term "fleeing" connotes "running away"

from something.  See, e.g., Merriam-Webster's Collegiate Dictionary 478 (11th ed. 2005).  The

case law is in accord.  See, e.g., Welch v. United States, 604 F.3d 408, 418 (7th Cir. 2010)

(distinguishing between flight and "failure to stop"); see also United States v. Jones, 428 F.

Supp. 2d 497, 500 (W.D.Va. 2006); United States v. Fox, 147 F. Supp. 2d 1008, 1010 (N.D. Cal.

2001) (finding flight when defendant continued to travel after an attempt to stop defendant within

the Park "so she cannot be arrested within its borders").  Indeed, Jones specifically holds that "§

1a-6(b)(1) requires that a defendant have knowledge that he is being pursued by police and a

resultant intention to evade arrest."  428 F. Supp. 2d at 500-01.

On the facts in this case, I find there is no evidence justifying a conclusion that

LaFountain was "fleeing" the Boston National Historic Park in order to avoid arrest.  Given the

short distance LaFountain traveled in total, some of which he traveled before the Ranger had

activated his lights and turned onto Monument Square, as well as LaFountain's prompt stop in

_____

[1]  The Rangers did seek and obtain from LaFountain a waiver of the prompt initial
appearance provided for by the Rules of Criminal Procedure.

4

response to the siren, I find LaFountain did not flee to avoid arrest. Because LaFountain was arrested outside the Park System, but not after "fleeing therefrom," I find the Ranger lacked statutory authority to arrest LaFountain.[2] The only question remaining, then, is whether the exclusionary rule applies in these circumstances, as LaFountain urges.

Another session of this Court has considered this question before and rejected the application of the exclusionary rule, and so has the undersigned. Ryan, 729 F. Supp. 2d at 488-91; United States v. Snow, 2010 WL 3070142, at *7-10 (D. Mass. Aug. 5, 2010); United States v. Ralph, No. 07-po-168-LTS, Electronic Order dated 1/3/2008. Plainly, the limitation on the Ranger's authority derives only from the statute. The Constitution neither imposes nor requires the limitation established by Congress. Substantial, though not all, case law rejects the application of the exclusionary rule to remedy the violation of a statute imposing a territorial limitation on the arresting officer's authority. See, e.g., Jones, 428 F. Supp. 2d at 502 (rejecting the application on the exclusionary rule on substantially similar facts and citing cases); Ryan, 729 F. Supp. 2d at 488-91 (same); Snow, 2010 WL 3070142, at *7-10 (same). Although the First Circuit has not yet addressed the question, it has provided substantial guidance:

> The Supreme Court has held that lack of statutory authority and the contravention of a regulation do not automatically invoke the exclusionary rule. The exclusionary rule was not fashioned to vindicate a broad, general right to be free of agency action not "authorized" by law, but rather to protect certain specific, constitutionally protected rights of individuals.

United States v. Hensel, 699 F.2d 18, 29 (1st Cir. 1983) (Breyer, J.) (internal citations omitted).

---

[2] The government has advanced no other argument authorizing the Ranger to make an arrest in this case (except its contention that no arrest occurred at all). The government also advances no reason, fact, or circumstance that justified the Ranger cuffing and transporting LaFountain in the course of the detention, other than an arrest. See United States v. Ryan, 729 F. Supp. 2d 479, 487 (D. Mass. 2010).

In Hensel, a case concerning the search of a foreign flagged vessel at sea, the First Circuit rejected application of the exclusionary rule, in part, after finding that the statute in question was designed not to protect the "privacy rights" of the defendant, but the "rights of foreign sovereigns." Id. Here, the statute in question appears designed not as a measure to protect the privacy interests of individual citizens (since nothing would preclude other law enforcement officers, on their own or in response to a call from a ranger, to arrest a defendant outside the Park System), but rather to focus rangers on the Park Service's mission of "visitor and resource protection," rather than wide ranging law enforcement activities, and to promote comity among the rangers, other federal law enforcement agencies, and state and local law enforcement agencies. See H.R. Rep. No. 94-1569, 1976 WL 13866, at *9 (1976).

Accordingly, application of the exclusionary rule is not warranted in this case, as in all other respects the arrest was reasonable under the Fourth Amendment.[3] Therefore, the Motion to Suppress (Doc. No. 7) is DENIED.

Trial will commence on April 1, 2013 at 9:00 a.m. in Courtroom #24.

/s/ Leo T. Sorokin
LEO T. SOROKIN
Chief United States Magistrate Judge

---

[3] At least one court has noted that a "blatant disregard" of a law defining an officer's territorial jurisdiction "could weigh on the scales of reasonableness." Pasiewicz v. Lake Cnty. Forest Pres. Dist., 270 F.3d 520, 527 (7th Cir. 2011). The record contains no such evidence of blatant disregard by the Ranger here. Moreover, the Ranger saw the initial offense within the Park and activated his blue lights within the Park while LaFountain was within the Park.